MIKE WILLSON, JUSTICE
The jury convicted Debra Vinson Daniel of the offense of driving while intoxicated.[1] The trial court assessed Appellant's punishment at ninety days in the county jail, probated for a term of twelve months, and imposed a $500 fine. On appeal, Appellant asserts three issues. We affirm.
I. The Charged Offense
The State charged Appellant, by information, with the offense of driving while intoxicated (DWI). The State later amended the information to drop the allegation that Appellant was intoxicated because she had a blood-alcohol concentration of 0.08 or greater. The State added the allegation that Appellant was intoxicated "by loss of use of her normal mental and physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, or a combination of two *235 or more of those substances, or any other substance, into her body."
To obtain a conviction for DWI, the State must prove that the defendant operated a motor vehicle in a public place while intoxicated. PENAL § 49.04(a). "Intoxicated" means that the person does not have the normal use of his or her mental faculties because of taking into his or her body alcohol, drugs, a dangerous drug or controlled substance, or a combination of those, or any other substance. PENAL § 49.01(2). Appellant pleaded "[n]ot guilty" to that charged offense and proceeded to trial.
II. Evidence at Trial
As Laura and Andrew Dunlap drove their vehicle on Highway 83 in Stonewall County, they saw Appellant drive erratically and weave across both lanes of traffic at seventy-five to eighty miles per hour before she drove off the road, drove through a fence, struck a culvert, and then struck a telephone pole. The Dunlaps called 9-1-1 and reported Appellant's single-vehicle accident. Sheila Faye Harrison, a deputy with the Stonewall County Sheriff's Department, was the first officer on the scene. A short time later, Sheriff Bill Mullen and his wife, Stephenia Mullen, arrived to assist Deputy Harrison. Sheriff Mullen worked to secure the telephone pole that Appellant had hit. The pole was leaning, and he was worried about the lines breaking and the telephone pole falling.
Shortly after Sheriff Mullen and his wife arrived at the scene, Brandon Craig Tidmore, a trooper with the Texas Department of Public Safety, arrived. Trooper Tidmore spoke with Appellant, and she denied drinking any alcohol that day. However, Appellant did tell Trooper Tidmore that she was taking several prescription medications. Trooper Tidmore also testified that he observed that Appellant was crying, that she was unsteady on her feet, and that her speech was slow and slurred. When Trooper Tidmore asked for Appellant's driver's license, she told him that it was in her vehicle. Trooper Tidmore then went to get Appellant's driver's license from her vehicle because he "had to work the crash." Before Trooper Tidmore went to Appellant's vehicle, Sherriff Mullen explained that he had already gone to the vehicle because he wanted to "gather[ ] up [Appellant's] belongings" before her vehicle was towed.
Sheriff Mullen took several prescription medication bottles from the floorboard and the glove compartment of the vehicle and placed them inside Appellant's purse. Trooper Tidmore took photographs of all of Appellant's prescription medication bottles-including the ones found by Sheriff Mullen in Appellant's glove compartment-prior to the time that he arrested Appellant. Afterward, Trooper Tidmore attempted to perform a horizontal gaze nystagmus test, which is a field-sobriety test, on Appellant, but he stopped after the third attempt because she stumbled and he felt that it would not be safe to continue. Trooper Tidmore arrested Appellant for the offense of driving while intoxicated.
III. Issues Presented
In her first issue, Appellant argues that the trial court erred when it denied her motion to suppress evidence. In her second issue, which has two parts, she argues that the evidence at trial was insufficient to support her conviction and contends that the trial court erred when it failed to include a jury instruction in accordance with *236 Article 38.23(a) of the Texas Code of Criminal Procedure.[2] In her third and final issue, Appellant argues that the trial court erred when it admitted lay opinion testimony in violation of Texas Rules of Evidence 701 and 702.[3]
IV. Analysis
We will first address Appellant's sufficiency-of-the evidence complaint. Afterward, we will address her motion to suppress. Then, we will address her Article 38.23 complaint and, finally, her third issue in which she complains about the admission of lay opinion testimony by three witnesses.
A. Issue Two, Part One: The State adduced sufficient evidence that Appellant, while in Stonewall County, committed the offense of driving while intoxicated.
The standard of review for sufficiency of the evidence is whether any rational jury could have found Appellant guilty beyond a reasonable doubt. Jackson v. Virginia , 443 U.S. 307, 318, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ; Brooks v. State , 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) ; Hooper v. State , 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). We review the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Jackson , 443 U.S. at 319, 99 S.Ct. 2781 ; Isassi v. State , 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). The trier of fact may believe all, some, or none of a witness's testimony because the factfinder is the sole judge of the weight and credibility of the witnesses. Sharp v. State , 707 S.W.2d 611, 614 (Tex. Crim. App. 1986) ; Isham v. State , 258 S.W.3d 244, 248 (Tex. App.-Eastland 2008, pet. ref'd). We defer to the trier of fact's resolution of any conflicting inferences raised in the evidence and presume that the trier of fact resolved such conflicts in favor of the verdict. Jackson , 443 U.S. at 326, 99 S.Ct. 2781 ; Brooks , 323 S.W.3d at 894 ; Clayton v. State , 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).
1. The State adduced sufficient evidence that Stonewall County was the proper venue.
Appellant argues that the State presented no evidence that she committed the alleged DWI offense in Stonewall County. Venue is not an element of the misdemeanor offense of driving while intoxicated and, therefore, can be established by a preponderance of the evidence. TEX. CODE CRIM. PROC. ANN. art. 13.17 (West 2015) ; Hernandez v. State , No. 11-02-00292-CR, 2004 WL 67634, at *1 (Tex. App.-Eastland Jan. 15, 2004, no pet.) (not designated for publication). If a defendant fails to object to improper venue at the trial court stage, we presume that the venue was proper. See TEX. R. APP. P. 44.2(c)(1) ; see also Keys v. State , No. 06-10-00091-CR, 2011 WL 2684909, at *4 (Tex. App.-Texarkana July 12, 2011, pet. ref'd) (mem. op., not designated for publication). Appellant did not object to venue in Stonewall County as improper. In addition, Appellant's first exhibit at trial listed "Stonewall" as the county of arrest. Accordingly, venue was proper.
2. The State adduced sufficient evidence to convict Appellant of DWI because of the manner in which Appellant drove before the accident, her behavior and speech after the accident, and her admission that she took prescription medications.
Appellant contends that the evidence was insufficient to support her DWI
*237 conviction because no reasonable jury could conclude that Appellant was "intoxicated" and because "[t]he trial court is only entitled to consider evidence that is properly admitted." When conducting a sufficiency review, we consider all the evidence admitted at trial, including pieces of evidence that may have been improperly admitted. Winfrey v. State , 393 S.W.3d 763, 767 (Tex. Crim. App. 2013) ; Clayton v. State , 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).
Intoxication can be demonstrated by showing that the defendant (1) lost "the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, [or] a dangerous drug ... into the body" or (2) had "an alcohol concentration of 0.08 or more." PENAL § 49.01(2). While the specific substance is not an element of the offense, it is an evidentiary issue that may be proved by circumstantial evidence. See Gray v. State , 152 S.W.3d 125, 132 (Tex. Crim. App. 2004).
The Dunlaps testified that Appellant was driving erratically at a high speed before she lost control of her vehicle, drove through a fence, crashed into a culvert, and struck a telephone pole. Stephenia testified that Appellant's speech was slurred and that she had trouble walking. Trooper Tidmore also described Appellant's speech as slow and slurred, and he noted that Appellant had difficulty walking and that she could not complete a horizontal gaze nystagmus test. Appellant admitted to taking prescription medication on the day of the accident. Jodi Kay Chaney, a pharmacist, testified that several of the prescription medication bottles found in Appellant's vehicle contained a warning to patients that drowsiness could result if a person took the medication and that one who took the medication should be cautious when driving or operating heavy machinery.
Appellant's trial counsel argued that the reasons Appellant crashed her vehicle could have been because she was eating and was distracted and that her behavior afterward could have been due to a head injury from the accident. The jury's task, as factfinder, was to resolve the conflicts in the evidence and to evaluate and weigh the credibility of the witnesses' testimony. See Wesbrook v. State , 29 S.W.3d 103, 111 (Tex. Crim. App. 2000) ; see also Crouse v. State , 441 S.W.3d 508, 513-15 (Tex. App.-Dallas 2014, no pet.) (holding that there was sufficient evidence to support a DWI conviction when the defendant had slurred speech, was on prescription medication, and was driving in a circle at night-despite defendant's alternative explanation for his condition). We hold that the State adduced sufficient evidence for a jury to convict Appellant of DWI, as ultimately charged.
B. Issue One: The trial court did not abuse its discretion when it denied Appellant's motion to suppress evidence.
In her first issue on appeal, Appellant alleges that law enforcement personnel conducted an illegal warrantless search. At trial, she asked that the trial court suppress photographs of the prescription pill bottles and pills found in her vehicle. The State argues that the photographs were obtained legally because law enforcement acted with Appellant's consent. Alternatively, the State argues that the search was legal because the evidence was in plain view, because law enforcement had probable cause to search the vehicle, because there were exigent circumstances that justified the search, or because the search was incident to a lawful arrest. We disagree with Appellant, as we explain below, because when she asked the police to go to her vehicle, enter it, and get her *238 personal things for her, she waived or forfeited any legitimate expectation of privacy.
1. Standard of Review
We review a trial court's ruling on a motion to suppress for an abuse of discretion. Lujan v. State , 331 S.W.3d 768, 771 (Tex. Crim. App. 2011). We apply a bifurcated standard of review. Valtierra v. State , 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). First, we afford almost total deference to the trial court's determination of historical facts. Id. The trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. Id. Second, we review de novo the trial court's application of law to facts. Id. at 447-48. We will sustain the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. Id.
2. When Appellant requested that law enforcement officers go to her vehicle and collect her personal things, she waived or forfeited any legitimate expectation of privacy in her vehicle.
The State does not dispute that law enforcement personnel did not have a warrant to search Appellant's vehicle. However, the State argues that Appellant lacked standing to contest the search because she did not have a subjective expectation of privacy in her vehicle. In addition, the State asserts that Appellant gave law enforcement personnel implied consent when she asked them to gather her personal belongings from her vehicle. As the Court of Criminal Appeals explained in Richardson v. State , the question of standing to challenge a search is integral with the question of whether a search has occurred because both depend on the existence of a reasonable expectation of privacy by the defendant. 865 S.W.2d 944, 948 (Tex. Crim. App. 1993).
The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches or seizures by the government and from governmental physical intrusions into a place or thing if the individual has a reasonable expectation of privacy in the place searched or the item seized. Rodriguez v. State , 469 S.W.3d 626, 631 (Tex. App.-Houston [1st Dist.] 2015, pet. ref'd) (citing United States v. Jones , 565 U.S. 400 405-08, 132 S.Ct. 945, 181 L.Ed.2d 911 (2012) ). In order to have standing to challenge the legality of the search, a defendant must have both a subjective and objective expectation of privacy in the place being searched. Matthews v. State , 431 S.W.3d 596, 606 (Tex. Crim. App. 2014). An accused who wishes to assert a violation of her rights under the Fourth Amendment must show that she had a legitimate expectation of privacy in the place invaded. State v. Betts , 397 S.W.3d 198, 203 (Tex. Crim. App. 2013). If an accused makes such a showing, then it is generally held that she has standing to raise the Fourth Amendment violation. Rodriguez , 469 S.W.3d at 631.
The burden of proving facts establishing a legitimate expectation of privacy rests with the accused. Villarreal v. State , 935 S.W.2d 134, 138 (Tex. Crim. App. 1996). To carry this burden, the defendant must show (1) an actual subjective expectation of privacy in the entity searched and (2) society recognizes that expectation of privacy as objectively reasonable. Matthews , 431 S.W.3d at 606 ; Villarreal , 935 S.W.2d at 138. Whether a defendant has standing to contest a search and seizure is a question of law we review de novo. Parker v. State , 182 S.W.3d 923, 925 (Tex. Crim. App. 2006).
*239 In this case, the record reflects that Appellant owned the vehicle, which was not drivable and had to be towed. We note that that the expectation of privacy "in one's automobile 'is significantly less than that relating to one's home or office.' " Roberts v. State , 444 S.W.3d 770, 774 (Tex. App.-Fort Worth 2014, pet. ref'd) (quoting South Dakota v. Opperman, 428 U.S. 364, 367-68, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976) ); see Robertson v. State , 541 S.W.2d 608, 610 (Tex. Crim. App. 1976). "This view rests on the fact that the motor vehicle's function is transportation and it seldom serves as one's residence or as the repository of one's personal effects." Robertson , 541 S.W.2d at 610-11 (citing Cardwell v. Lewis , 417 U.S. 583, 590, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974) ). However, a defendant generally has standing to challenge the search of a vehicle that she owns. Arizona v. Gant , 556 U.S. 332, 345, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009) ; State v. Granville , 423 S.W.3d 399, 406-07 (Tex. Crim. App. 2014).
In this case, there can be little doubt that Appellant held a diminished but legitimate expectation of privacy in the vehicle that she owned and had driven. Granville , 423 S.W.3d at 406-07. And although the timing of Appellant's request is not as clear in the testimony as it could be, there is evidence in the record that Appellant requested help to get her things from her vehicle. Sheriff Mullen testified, "I gathered everything up and just put it in her purse, because she was wanting it." He was the first person to go into Appellant's vehicle, and he testified that he did so because Appellant "said something about [wanting] her purse." When Sheriff Mullen complied with this request, he saw prescription medication bottles in Appellant's vehicle. During cross-examination, Sheriff Mullen clarified that Appellant never asked him directly for her purse and that he never asked or received Appellant's consent to search her vehicle. Nonetheless, Sheriff Mullen testified that Appellant wanted her personal belongings and that he went to her vehicle and collected her things, including the prescription medication bottle in the glove compartment.
The two other officers, Deputy Harrison and Trooper Tidmore also retrieved Appellant's personal items from her vehicle. Deputy Harrison testified that, at some point, she and Stephenia removed Appellant's clothes from her vehicle because "[Appellant] wanted her clothes. She wanted her purse." Trooper Tidmore testified that he went to Appellant's vehicle to get her driver's license because he wanted to confirm her identity. When Appellant asked law enforcement officers to retrieve some of her things, she waived or forfeited whatever legitimate expectation of privacy she had held up until that time. The Fourth Amendment provides no protection in the absence of a legitimate expectation of privacy. See Walter v. State , 28 S.W.3d 538, 541 (Tex. Crim. App. 2000).
We defer to the trial court's evaluation of a witness's demeanor and credibility, and we hold that the trial court could have believed that Appellant requested that Sheriff Mullen and Trooper Tidmore go to her vehicle and collect her things. In short, the trial court could have believed that she made the request and acquiesced in their actions. Notably, the record does not reflect that Appellant told Sheriff Mullen or Trooper Tidmore to stop when they approached her vehicle and she did not indicate to anyone that they could not go through her vehicle. In Valdez v. State , the court held that, where the answer to question about consent to search was ambigious, compliance with an officer's actions allowed the trial court to infer that the defendant's words, body language, and general demeanor suggested that he permitted *240 the police to enter and search his vehicle. No. 05-15-00907-CR, 2016 WL 1253523, at *2 (Tex. App.-Dallas 2016, pet. ref'd) (mem. op., not designated for publication). Under the limited facts of this case, although Appellant initially had standing and a reasonable expectation of privacy in her vehicle, she waived or forfeited that expectation of privacy and whatever protection the Fourth Amendment had theretofore afforded her.
3. Even if the trial court erred when it denied her motion to suppress evidence, Appellant suffered no harm.
If we are incorrect in our conclusion that Appellant waived or forfeited her legitimate expectation of privacy, any error by the trial court was harmless. We conduct a harm analysis to determine whether the error calls for reversal of the judgment. TEX. R. APP. P. 44.2 ; Love v. State , AP-77,024, 543 S.W.3d 835, 845-46, 2016 WL 7131259, at *7 (Tex. Crim. App. Dec. 7, 2016). The harm analysis for a review of a violation of the Fourth Amendment is a constitutional one under Rule 44.2(a). Hernandez v. State , 60 S.W.3d 106, 108 (Tex. Crim. App. 2001). Under this standard, we must reverse the trial court's judgment unless we determine beyond a reasonable doubt that the error did not contribute to Appellant's conviction or punishment. TEX. R. APP. P. 44.2(a).
The harm analysis should focus as much as possible on the probable effect that the evidence had on the jury in light of the existence of other evidence. Love , 543 S.W.3d at 846, 2016 WL 7131259, at *7 (citing Wesbrook v. State , 29 S.W.3d at 119 ). "We consider such things as the nature of the error, the extent to which it was emphasized by the State, its probable collateral implications, and the weight a juror would probably place on the error." Id. (citing Snowden v. State , 353 S.W.3d 815, 821-22 (Tex. Crim. App. 2011) ). This list is not exclusive, and the court should review any and every circumstance apparent in the record that logically informs a determination whether, beyond a reasonable doubt, this particular error contributed to the conviction or punishment. Id. (citing Snowden , 353 S.W.3d at 822 ). We are required to evaluate the entire record in a neutral manner and "not 'in the light most favorable to the prosecution.' " Id. (quoting Harris v. State , 790 S.W.2d 568, 586 (Tex. Crim. App. 1989) (discussing constitutional harm under former TEX. R. APP. P. 81(b)(2))).
In the State's opening statement, the prosecutor outlined how witnesses saw Appellant pull out from a roadside park, fishtail her vehicle, strike a culvert, and strike a telephone pole. The State also discussed how law enforcement officers thought Appellant was intoxicated and described how Sheriff Mullen found prescription medication bottles in the vehicle. In Appellant's opening statement, her trial counsel explained that Appellant stopped to get chicken on the way to her mother's house and that, while she drove, she started to eat the chicken. Appellant had greasy hands, lost control of her vehicle, and had an accident. Appellant's trial counsel explained that law enforcement officers did not test Appellant to see if she had any controlled substances in her system or if she had suffered a head injury from the accident.
During its case-in-chief, the State presented the testimony of law enforcement officers, who testified about Appellant's appearance and mannerisms. Deputy Harrison testified that, based on her observations of Appellant, she believed Appellant was "under the influence." Deputy Harrison also testified that Appellant told her that she was eating chicken while driving because she had to take her medication *241 with food. Trooper Tidmore corroborated Deputy Harrison's testimony that Appellant had slurred speech and difficulty walking, and he noted that Appellant admitted to taking prescription medication. Trooper Tidmore also explained that he took photographs of the prescription medication bottles found inside Appellant's vehicle. The State entered these photographs as evidence of Appellant's alleged intoxication.
The State also introduced Trooper Tidmore's dash camera footage into evidence, which depicted Appellant stating that she was taking tramadol, lisinopril, Pristiq, and "hydrocortisol." Finally, the State presented testimony from Chaney, who owned the pharmacy. Chaney testified from actual pharmacy records that Appellant was dispensed hydrocodone, quetiapine, clonazepam, tramadol, Pristiq, tizanidine, and gabapentin in the two months prior to her accident. Chaney also testified that the labels for certain drugs, including hydrocodone, quetiapine, clonazepam, tramadol, and tizanidine, contain warnings on the prescription medication bottles that warn of possible drowsiness when taken.
In closing, the State emphasized to the jury, "You've seen the drugs, ... seen the number of them, ... seen the type of them, ... seen some explanation of them." The State argued that, just before the accident, Appellant drove on the wrong side of the road three times, at a high speed. Her speech, balance, and demeanor at the scene indicated that she was intoxicated. The State acknowledged that it was unlikely that alcohol was involved. It argued, however, that the prescription bottles and Appellant's admission that she was taking medications that could cause drowsiness, and which warned about operating machinery, proved that she was intoxicated by some other substance. The State also argued that Appellant did not have a head injury and emphasized Chaney's testimony about the warnings on the prescription medication bottles.
Even without the admission of the photographs, Appellant admitted to Deputy Harrison and Trooper Tidmore that she was taking prescription medications. Chaney testified that in the two months prior to Appellant's accident, Appellant had been prescribed several different prescription medications, some of which caused drowsiness. Witnesses also described Appellant's erratic driving prior to her accident. Law enforcement officers and witnesses also described her speech as being slurred, and they recalled that she had difficulty walking.
Although the State referenced prescription medications in its case-in-chief and during its closing argument, such references were not specific to the photographs of the prescription bottles. Instead, those references generally referred to prescription medication, that by Appellant's own admission, she had taken. See Dansby v. State , No. 12-15-00269-CR, 530 S.W.3d 213, 230-31, 2017 WL 1534051, at *11 (Tex. App.-Tyler Apr. 28, 2017, pet. ref'd) (holding that the erroneous admission of evidence was harmless when there existed independent evidence of the defendant's intoxication). Given the great weight of the evidence-absent the admission of the prescription medication photographs-and viewing the evidence in the light most favorable to the verdict, we cannot say beyond a reasonable doubt that the photographs contributed to Appellant's conviction or punishment. See Love , 543 S.W.3d at 845-46, 2016 WL 7131259, at *7. We overrule Appellant's first issue.
C. Issue Two, Part Two: The trial court did not err when it did not give an Article 38.23 instruction to the jury.
*242 Appellant asserts that the trial court had a sua sponte duty to instruct the jury that any evidence illegally obtained by the police could not be considered if the jury had reasonable doubt about the legality of the search, as the trial court is required to do when voluntariness of a confession is a disputed fact. See Contreras v. State , 312 S.W.3d 566, 574 (Tex. Crim. App. 2010). Texas codified the exclusionary rule in Article 38.23 of the Texas Code of Criminal Procedure. CRIM. PROC. art. 38.23(a). Article 38.23(a) provides:
(a) No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.
In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.
Id. The Court of Criminal Appeals in Madden v. State , outlined the three requirements that a defendant had to prove to require the trial court to submit an Article 38.23(a) instruction. 242 S.W.3d 504, 510 (Tex. Crim. App. 2007). The three requirements are (1) the evidence heard by the jury must raise an issue of fact, (2) the evidence on that fact must be affirmatively contested, and (3) that contested factual issue must be material to the lawfulness of the challenged conduct in obtaining the evidence. Id. The Article 38.23(a) jury instruction requirement only applies when there exists a factual issue that evidence was obtained illegally. Maldonado v. State , 998 S.W.2d 239, 246 (Tex. Crim. App. 1999). "A fact issue about whether evidence was legally obtained may be raised 'from any source, and the evidence may be strong, weak, contradicted, unimpeached, or unbelievable.' " Garza v. State , 126 S.W.3d 79, 85 (Tex. Crim. App. 2004) (quoting Wilkerson v. State , 933 S.W.2d 276, 280 (Tex. App.-Houston [1st Dist.] 1996) ).
In this case, there was no factual dispute about what Appellant told law enforcement officers and who conducted the search. Sheriff Mullen testified at the hearing on the motion to suppress that he gathered up Appellant's "stuff" from the vehicle because Appellant "said something about [wanting] her purse." Sherriff Mullen was the first person to search Appellant's vehicle. Sheriff Mullen testified, "I gathered everything up and just put it in her purse, because she was wanting it." The dispute in the motion to suppress and at trial was not a factual dispute about how the search was conducted. Rather, the dispute was whether what Appellant said legally amounted to a waiver or forfeiture of her legitimate expectation of privacy. After a review of the record, we hold that the trial court did not err when it refused to submit the instruction. However, even if we are incorrect, this error by the trial court, if any, as we explained earlier on the standing and search issue, was harmless. We overrule Appellant's second issue.
D. Issue Three: The trial court did not abuse its discretion when it admitted lay opinion testimony.
In her third issue, Appellant asserts that the trial court abused its discretion when it admitted improper lay opinion testimony in violation of Rules 701 and 702 of the Texas Rules of Evidence. Specifically, Appellant asserts that the trial court erred when it admitted the following evidence: (1) Deputy Harrison's testimony that Appellant was intoxicated; (2) Stephenia Mullen's *243 assertion of Appellant's intoxication and medical condition; and (3) Chaney's testimony concerning the "analgesic" effects of Appellant's medications. To preserve a complaint for appellate review, the record must show that Appellant made a specific and timely complaint to the trial court and that the trial court ruled on it. TEX. R. APP. P. 33.1 ; Layton v. State , 280 S.W.3d 235, 238-39 (Tex. Crim. App. 2009). The objecting party must state the grounds to support the requested ruling "with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." TEX. R. APP. P. 33.1(a)(1)(A) ; see Resendez v. State , 306 S.W.3d 308, 314 (Tex. Crim. App. 2009) ("Only when there are clear contextual clues indicating that the party was, in fact, making a particular argument will that argument be preserved.").
Under Rule 701, a witness may give an opinion or if it is (1) based on his or her perception and (2) is helpful to the jury's understanding of the witness's testimony or the facts of the case. TEX. R. EVID. 701 ; Fairow v. State , 943 S.W.2d 895, 898 (Tex. Crim. App. 1997). Texas law provides that lay opinion testimony by a police officer is admissible to prove a person's intoxication. Emerson v. State , 880 S.W.2d 759, 763 (Tex. Crim. App. 1994). Officers that testify as to a person's intoxication may draw their personal knowledge from past experiences. See Fairow , 943 S.W.2d at 898 ; see also Osbourn v. State , 92 S.W.3d 531, 536 (Tex. Crim. App. 2002) ("[A]lthough police officers have training and experience, they are not precluded from offering lay testimony regarding events which they have personally observed."). Additionally, "[o]ne need not be an expert in order to express an opinion upon whether a person he observes is intoxicated." Cook v. State , No. 07-11-00390-CR, 2013 WL 5782915, at *6 (Tex. App.-Amarillo, 2013, pet. ref'd) (mem. op., not designated for publication) (quoting McNorton v. State , 170 Tex.Crim. 76, 338 S.W.2d 953, 954 (Tex. Crim. App. 1960) ). We address the three lay opinion testimonies in turn.
1. Deputy Harrison
Deputy Harrison testified that Appellant was crying, had difficulty walking, and that despite her "appropriate responses," she believed Appellant was "under the influence." Appellant's counsel objected to her "opinion" as being one that is "not based on scientific knowledge. [I]t's not something that she's qualified to give." Although Appellant's counsel did not specifically mention Rule 701, one can infer based on the context that the objection concerned improper lay opinion testimony. See Douds v. State , 472 S.W.3d 670, 674 (Tex. Crim. App. 2015). Appellant's counsel objected to Deputy Harrison's "opinion," and the trial court must have understood this objection to involve Rule 701 when it responded, "a lot of this has to do with a reasonable person's interpretation of what they're seeing about, so I'm going to overrule your objection." Appellant's Rule 701 objection was properly preserved.
Appellant asserts that Deputy Harrison's testimony was improper lay opinion testimony because she lacked the requisite training and experience to opine that Appellant was intoxicated. Although Deputy Harrison testified that the underlying case was her first traffic accident, she was a certified peace officer and her training and her observations permitted her to testify about a person's possible intoxication. See Taylor v. State , No. 03-03-00624-CR, 2006 WL 1649037, at *12 (Tex. App.-Austin 2006, pet. ref'd) (mem. op., not designated for publication) (holding *244 that Rules 701 and 702 permit both expert and lay witnesses to give an opinion about a person's intoxication). As a layperson, Deputy Harrison could give her opinion about Appellant's potential intoxication based on Appellant's appearance, composure, and mannerisms. As such, the trial court did not abuse its discretion when it allowed her testimony.
2. Stephenia Mullen
Appellant also asserts that the trial court abused its discretion when it permitted two sets of testimony by Stephenia Mullen, one set given at the hearing on the motion to suppress, and the other at trial. At the hearing, Stephenia testified as to the effects of head trauma and asserted that Appellant's symptoms were consistent with intoxication, not trauma. However, Appellant's counsel did not object to her testimony and did not preserve this issue for appeal. See Fuller v. State , 253 S.W.3d 220, 232 (Tex. Crim. App. 2008) (stating that, to preserve error for appellate review, a party must make a timely and specific objection).
Stephenia also testified at trial that Appellant spoke in a slow, slurred manner and that she had difficulty walking. Stephenia asserted that, as an emergency medical technician and a jailer, she had encountered several intoxicated individuals and that, based on her experiences and knowledge, she believed that Appellant was under the influence of "something." Appellant's counsel objected to this testimony as "eliciting ... expert testimony," which the trial court overruled because "a reasonable person can form these opinions." The trial court also stated that this objection was "ground we've already covered," referring to Appellant's earlier objection to Deputy Harrison's testimony. As we previously addressed, a lay person may provide an opinion as to another person's intoxication without being qualified as an expert on intoxication. Cook , 2013 WL 5782915, at *6. Stephenia observed Appellant's behavior and mannerisms and used her observations and personal experience to form an opinion as to Appellant's possible intoxication. We cannot say that the trial court abused its discretion when it allowed her testimony.
3. Pharmacist Chaney
Finally, Appellant asserts that the trial court also abused its discretion when it allowed Chaney to testify as to the effects of Appellant's prescription medications. Chaney testified that, although she was not Appellant's pharmacist at the time of the accident, she had recently purchased the pharmacy that had dispensed some of Appellant's medications. Chaney testified that pharmacy records reflected that, in the two months prior to the accident, Appellant was dispensed hydrocodone, quetiapine, clonazepam, tramadol, Pristiq, tizanidine, and gabapentin. She further testified that there are certain types of medications that are required by law to contain warning labels, which include statements like "may cause drowsiness" and "should be taken with food." Appellant's counsel objected because Chaney did not "have a basis or a proper foundation to bring that up" and because it was confusing and unfairly prejudicial. The State argued that this testimony was permissible because the warning labels are printed automatically and are put on the bottles as "a matter of procedure." The trial court overruled Appellant's objection.
To preserve an error for appellate review a defendant must demonstrate that (1) she made a timely and specific request, objection, or motion and (2) the trial judge ruled on it. TEX. R. APP. P. 33.1 ; Geuder v. State , 115 S.W.3d 11, 13 (Tex. Crim. App. 2003). "The complaining party *245 must let the trial judge know what she wants and why she thinks she is entitled to it, and do so clearly enough for the judge to understand and at a time when the trial court is in a position to do something about it." Bekendam v. State , 441 S.W.3d 295, 300 (Tex. Crim. App. 2014). Appellant's trial attorney complained that the State failed to lay a foundation for Chaney's testimony and argued that her testimony would confuse the jury and prejudice his client. Although Rule 33.1 does not require magic words to preserve an issue, the grounds for the objection must be apparent to the trial court. See Ford v. State , 305 S.W.3d 530, 533 (Tex. Crim. App. 2009). Given defense counsel's choice of words, the trial court could have inferred from the context that there was a Rule 401 relevance objection, a Rule 701 lay opinion objection, a Rule 702 expert opinion objection, or a Rule 403 objection.
However, even if we assume that Appellant notified the trial court of these four objections, Appellant failed to obtain rulings on any of the objections except for relevance. In response to Appellant's objections, the trial court responded, "I think it's relevant to any prescription, especially those that have some prohibition against driving, is relevant in this case." Because the trial court did not rule on the Rule 701, 702, or 403 objection, and counsel did not secure rulings on those objections, Appellant failed to preserve those issues for review. See TEX. R. APP. P. 33.1(a). We overrule Appellant's third issue on appeal.
V. Conclusion
We have reviewed the record and hold that there was sufficient evidence for a rational jury to find beyond a reasonable doubt that Appellant committed the offense of driving while intoxicated. We also hold that the trial court did not abuse its discretion when it denied Appellant's motion to suppress because Appellant waived or forfeited any legitimate expectation of privacy. In light of the resolution of that issue, we need not address Appellant's remaining arguments about the search. And, even if we are incorrect about the trial court's denial of Appellant's motion, any error was harmless. Finally, we hold that the trial court did not abuse its discretion when it allowed Deputy Harrison's, Stephenia's, and Chaney's testimony.
VI. This Court's Ruling
We affirm the judgment of the trial court.

See Tex. Penal Code Ann. § 49.04 (West Supp. 2016).

See Tex. Code Crim. Proc. Ann. art. 38.23(a) (West 2005).

See Tex. R. Evid. 701, 702.