# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-24-00106-CR

---

**Eric Deon Rollins, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE 403RD DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-DC-24-904003, THE HONORABLE BRANDY MUELLER, JUDGE PRESIDING

---

## O P I N I O N

Eric Deon Rollins was charged with capital murder for shooting and killing Ishanae Rogers and Michael Satterwhite. *See* Tex. Penal Code §§ 19.02(b)(1), .03(a)(7). At the end of the trial, the jury found Rollins guilty, and his punishment was automatically assessed at life imprisonment without the possibility of parole. *See id.* § 12.31. In two issues on appeal, Rollins contends that the trial court erred by denying his motion for a mistrial and by failing to include in the jury charge an instruction on the defense of necessity. We will affirm the trial court's judgment of conviction.

## BACKGROUND

In the morning of April 28, 2022, Rollins and Juareese Caldwell were playing a gambling dice game in an alley in downtown Austin, Texas. During the game, several people interacted with the pair, including someone nicknamed "Fats." At the end of the game, Caldwell

and Rollins walked away briefly before returning to the area and sitting down along the edge of the alley. After briefly sitting down, Caldwell stood up, rushed towards Rollins who was still sitting, held a gun to Rollins's neck, searched Rollins, and took items from Rollins's clothing. Caldwell then aimed the gun at Rollins while walking away from the area. Once Caldwell left, Rollins got up and walked the other way out of the alley before driving away in his car.

After driving away, Rollins called Rogers's father, who was a friend, to tell Rogers's father about the robbery. At the time of the call, Rogers and her father were near a convenience store. Rollins told Rogers's father that Caldwell robbed him, that Caldwell used a weapon that an individual named Fats gave him, and that Fats got the gun from Satterwhite. Rollins asked Rogers's father if he knew where Caldwell lived because Rogers was married to Caldwell. Hearing the conversation, Rogers grabbed the phone and had a heated exchanged with Rollins about the robbery before ending the call.

Before Rollins called, Rogers and her father had planned to go to lunch, and they headed to her car after the phone call. On the way to the car, Rogers's father stopped to talk to someone, and Rogers continued walking and then sat in the passenger seat of her car. Following the phone call, Rollins drove to the convenience store in his brother's red Mustang, arrived about twelve minutes later, parked the Mustang, put on a mask, got out of the car, and ran towards Rogers's vehicle. Once he arrived at the car, Rollins aimed a gun at Rogers, fired multiple times, ran back to the Mustang less than one minute later, and drove off. Rogers's father drove Rogers to a nearby hospital, but she died approximately twenty minutes after being shot. An autopsy revealed that she died from a gunshot wound to the back.

After Rollins left the area near the convenience store, he drove toward the alley where he had been playing dice and arrived there ten minutes later. Once he arrived, he stopped

2

the car near a group of individuals who had not been present during the dice game. One of those individuals was Satterwhite. Rollins talked with Satterwhite through the car window before getting out of the car while still wearing the mask. While out of the car, Rollins placed his cellphone on the ground, aimed his gun at Satterwhite, fired multiple times, and continued to shoot Satterwhite in the back even after Satterwhite fell to the ground. Rollins then drove out of the alley. An autopsy performed on Satterwhite revealed that he died from multiple gunshot wounds to the front and back of his body.

About six hours after the second shooting, Rollins drove to the police station to turn himself in. Rollins was arrested and charged with capital murder for the deaths of Rogers and Satterwhite. During the trial, the State called the following witnesses who testified regarding the events summarized above: police officers investigating the two shootings, crime scene specialists, Rogers's father, and the medical examiner who performed autopsies on Rogers and Satterwhite. Surveillance videos of the two shootings were admitted into evidence.

In his case-in-chief, Rollins called as witnesses a clinical psychologist, who discussed the effects of trauma on decision making, and a police officer, who discussed his interview with Caldwell after the shootings. Rollins elected to testify and described events that occurred before the events in question, including being shot in prior robberies. Rollins also discussed the events in the alley in the morning of April 28. In particular, he testified that he won a lot of money from Caldwell that morning and that Caldwell got mad about losing. According to Rollins, Caldwell asked Fats for money, but Fats related that he did not have any money. Fats offered to ask his relative Satterwhite for money. Rollins described Satterwhite as a dangerous person who always had a weapon on him. Rollins testified that he believed that Satterwhite was standing around the corner based on what Fats said but acknowledged that he

3

did not personally know whether Satterwhite was in the area. When discussing the exchange between Caldwell and Fats, Rollins stated that Caldwell ambiguously asked Fats for something else that Caldwell would return later. Rollins theorized that Caldwell was asking Fats to get a gun from Satterwhite.

Moreover, Rollins stated that when Fats returned, he walked over to an area in the alley that is obscured from the view of surveillance cameras. Next, Rollins related that Caldwell went to the same spot to retrieve something that Fats left there, but Rollins did not see what the item was. Caldwell returned to the area where they were gambling, pulled out a gun, held the gun to Rollins's chin, and stole Rollins's money and jewelry. Rollins remembered feeling scared for his life and experienced flashbacks to prior robberies. Additionally, Rollins recalled that Caldwell told him, "[N]ext time I see you, I'm gonna kill you." Rollins testified that he went to his car to get away.

Rollins testified that he then called Rogers's father to tell Rogers's father that Caldwell, Fats, and Satterwhite had robbed him. Rogers's father was with Rogers and had the call on speakerphone. Rogers told Rollins, "you ain't gonna do shit. . . . What you don't know is me and my dad been telling [Caldwell] and them to get your old ass. You know what[, w]e gonna kill your bitch ass." Rollins related that before the call ended, Rogers's father told him, "You know what time it is. You dead." Rollins recalled that he believed the threats because he knew that Rogers had shot other people in the past and killed one man and because Rogers and her father were known for carrying weapons. Additionally, Rollins stated that he made the decision to shoot Rogers and her father because "it was my life or their lives," because he was certain that they would find him and kill him if he did not act, and because running away would not have stopped them from killing him.

4

Further, Rollins testified that he arrived at the convenience store within a few minutes of ending the call with Rogers and her father and saw Rogers's vehicle. According to Rollins, he believed Rogers and her father were both in the car and intended to shoot them but not kill them. Rollins recalled that he parked his car, got a gun from his friend who was in the car with him, ran up to Rogers's vehicle, "just started shooting," and "ran back to my car" afterwards.

Next, Rollins related that he decided to drive to the downtown area to see if Caldwell, Fats, and Satterwhite were still there. When he arrived in the alley, Rollins rolled down the window and talked with Satterwhite. According to Rollins, Satterwhite told him that he was not "supposed to be down here" due to the threats made against his life and that "[b]efore long" he was "gonna get smoked down here" if he stayed. Rollins testified that he believed that Satterwhite was referencing threats to kill him and believed Satterwhite had a gun on his person. Rollins noticed Satterwhite fumbling with something in his hands. Then Rollins asked his friend to give him the gun again, stepped out of the car, started shooting, and "kept shooting." Once he finished firing, Rollins got back into the car and drove off.

After considering the evidence presented at trial, the jury found Rollins guilty of the charged offense.

## DISCUSSION

In two issues on appeal, Rollins contends that the trial court erred by denying his motion for a mistrial and by failing to include in the jury charge instructions for the defense of necessity.

5

**Motion for Mistrial**

During the trial, Officer Timothy Price testified regarding his investigation of the shooting of Satterwhite. In his testimony, the following exchange occurred:

[State]: Now, when you're going through and doing any homicide investigation, as the information develops, do you tend to take different perspectives on the case?

[Price]: Yes.

[State]: And at times in your investigations, does the issue of self-defense sometimes arise?

[Price]: Yes, ma'am.

[State]: If that happens, what do you then do as a detective to try to take that into account?

[Price]: So if there's -- there's any evidence to believe that that's a possibility, you know, we'll take more steps evidence-wise and then do more research on the victims -- or supposed victims at that time.

[State]: Did you and Detective Ayers at any point have any concerns that self-defense might be at issue in these investigations?

[Price]: No.

[Rollins's Counsel]: Objection. . . . This is completely improper. We've already discussed that he's not an expert. And we're giving hypotheticals, and he's giving an opinion that self-defense doesn't apply. This is wildly prejudicial, irrelevant what he thinks about whether it applies or not. It is so prejudicial, I'm going to ask the Court for a mistrial at this point. Because even a curative instruction will not unring the bell in this particular instance.

. . . .

[Trial Court]: Okay. It sounds like there's no way that rephrasing this will make you feel any better about it.

[Rollins's Counsel]: No, ma'am.

[Trial Court]: Your motion for mistrial is denied.

6

On appeal, Rollins contends that the officer should not have been allowed to provide lay witness testimony concerning self-defense under Rule 701 of the Rules of Evidence. *See* Tex. R. Evid. 701. Under that rule, a lay witness may provide opinion testimony that is "rationally based on the witness's perception" and "helpful to clearly understanding the witness's testimony or to determining a fact in issue." *Id.* After referencing this Rule, Rollins argues that Officer Price's testimony was not based on his personal observation of the alleged crime and was instead "based on the testimony of witnesses[,] evidence from the crime scene," and "upon the observations of others." For that reason, Rollins urges that the testimony was not admissible under Rule 701 and, therefore, that the trial court should have granted his motion for a mistrial.[1]

Generally, before a party may present "a complaint for appellate review, the record must show that . . . the complaint was made to the trial court by a timely request, objection, or motion" "with sufficient specificity to make the trial court aware of the complaint." *See* Tex. R. App. P. 33.1(a). An issue raised on appeal generally must be preserved by a specific objection at trial. *Resendez v. State*, 306 S.W.3d 308, 312 (Tex. Crim. App. 2009). Accordingly, to preserve a complaint on appeal, the party must make a specific objection letting the trial court

---

[1] In the heading pertaining to his first issue, Rollins also states that the trial court should have granted his request for a limiting instruction that he made after requesting a mistrial. However, Rollins does not refer to the denial or his request for a limiting instruction in the argument section of his brief, nor does he refer to any authority supporting his contention that a limiting instruction should have been given. *See* Tex. R. App. P. 38.1(i) (requiring appellant's brief to "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record"). Instead, the standard of review and argument sections are limited to the denial of his motion for mistrial. Accordingly, we will limit our analysis of this issue to the denial of the motion for mistrial. *See Taylor v. State*, 558 S.W.3d 215, 218 (Tex. App.—Texarkana 2018, no pet.) (explaining that Rule 38.1 requires parties to explain why argument has substance and that appellate courts have no obligation to compose arguments for appellants); *King v. State*, 17 S.W.3d 7, 23 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd) (explaining that conclusory statements unsupported by authority present nothing for appellate review).

"know what he wants, why he thinks himself entitled to it, and do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it." *Id.* at 312-13 (quoting *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992)); *see Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009). "[T]he point of error on appeal must comport with the objection made at trial." *Yazdchi v. State*, 428 S.W.3d 831, 844 (Tex. Crim. App. 2014). An objection stating one legal theory may not be used to support a different legal theory on appeal. *Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995). Preservation of error is a "systemic requirement" on appeal. *See Darcy v. State*, 488 S.W.3d 325, 327 (Tex. Crim. App. 2016). Appellate courts should not address the merits of an issue that has not been preserved for appellate consideration. *See Blackshear v. State*, 385 S.W.3d 589, 591 (Tex. Crim. App. 2012).

After objecting, Rollins's attorney briefly mentioned that there previously had been discussion that the officer was not an expert and then stated that the officer was giving an opinion that self-defense did not apply. When explaining why he believed Officer Price's testimony regarding self-defense was improper, Rollins's attorney asserted that his testimony was not relevant and that it was too prejudicial, which are considerations under Rules of Evidence 401 and 403. *See* Tex. R. Evid. 401, 403. Rollins's attorney did not identify any of the requirements of Rule 701 or argue how those requirements had not been met. *See id.* R. 701.

Recently, the Court of Criminal Appeals considered whether an exchange similar to that present here preserved a complaint under Rule 701. *See Mosley v. State*, 666 S.W.3d 670 (Tex. Crim. App. 2023). In *Mosely*, the State asked an officer whether he found "any evidence in your opinion of the intent to kill; that [Appellant], at the time he pulled the trigger, had the intent to kill" the victim. *Id.* at 675. In response, Mosley's attorney objected and asserted that

8

the State's question called for "an opinion – or calls for [the officer] to be an expert." *Id.* The trial court overruled the objection. *Id.* On appeal, Mosely claimed that the officer's testimony was based on his viewing of surveillance footage. *Id.* For that reason, he urged that the personal "perception" requirement of Rule 701(a) was not met. *Id.* Regarding the helpful requirement of Rule 701(b), he argued that prong was also not met because the jury viewed the same surveillance footage and could draw its own conclusions. *Id.*

The Court of Criminal Appeals determined that Mosley's objection that the testimony called for an opinion or called for the officer to be an expert "was ambiguous" because it "failed to inform the trial court that Appellant was complaining that neither component for lay opinion testimony had been met." *Id.* at 676. Further, the Court of Criminal Appeals explained that the "lack of clarification prevented the trial court from addressing the merits of a Rule 701 objection at trial." *Id.* For those reasons, the Court of Criminal Appeals concluded that Mosely "did not preserve Rule 701 complaints for appellate review." *Id.*

Like the objection deemed ambiguous in *Mosely*, Rollins's stating that the parties had previously discussed how Officer Price was not an expert and that he was giving an opinion on self-defense did not inform the trial court that neither of the components of Rule 701 had been met. Moreover, the bases for his objection that he provided before the trial court denied his motion for mistrial—that the evidence was irrelevant and prejudicial—did not preserve his issue under Rule 701. *See Broxton*, 909 S.W.2d at 918; *see also Daniel v. State*, 547 S.W.3d 230, 245 (Tex. App.—Eastland 2017, no pet.) (concluding that ruling under one Rule of Evidence did not preserve claims under other Rules of Evidence).

For these reasons, we conclude that Rollins failed to preserve his Rule 701 complaint for appeal and, therefore, overrule his first issue asserting that the trial court should have granted his request for a mistrial.

**Defense of Necessity**

During the jury-charge conference, Rollins requested an instruction on self-defense and the defense of necessity. The trial court granted the first request but denied the second. In his second issue, Rollins asserts that he was entitled to his requested necessity instruction because he admitted to committing the charged offense but committed the offenses under the risk of imminent harm. As support, Rollins refers to his testimony summarized above. Specifically, Rollins emphasizes his testimony asserting that he had been previously robbed and shot and that he had been robbed and threatened with a gun on the day in question before he shot Rogers and Satterwhite. When describing Rogers and Satterwhite, Rollins explained that they were dangerous people and were known to carry weapons. Rollins testified that Rogers threatened him on the phone before the shooting and that Satterwhite mentioned threats against Rollins and was fumbling with something in his hands before the second shooting. Based on the preceding, Rollins contends that the trial court should have granted his request for an instruction on necessity.

In addressing an issue regarding an alleged jury-charge error, appellate courts must first decide whether there is error before addressing whether the alleged error resulted in any harm. *See Thanh Cuong Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). The amount of harm needed for a reversal depends on whether a complaint regarding "that error was preserved in the trial court." *Swearingen v. State*, 270 S.W.3d 804, 808 (Tex. App.—Austin 2008, pet. ref'd). If no objection was made, a reversal is warranted only if the error "resulted in

10

'egregious harm.'" *See Neal v. State*, 256 S.W.3d 264, 278 (Tex. Crim. App. 2008) (quoting *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g)). However, if the defendant made a timely objection, reversal is required if there has been "some harm." *Thanh Cuong Ngo*, 175 S.W.3d at 743 (quoting *Almanza*, 686 S.W.2d at 171).

When determining whether a defensive instruction should have been provided, appellate courts "view the evidence in the light most favorable to the defendant's requested instruction." *Bufkin v. State*, 207 S.W.3d 779, 782 (Tex. Crim. App. 2006). In general, a defendant is entitled to a jury instruction on a defensive issue if the defensive issue "is raised by the evidence, regardless of the strength or credibility of that evidence." *Farmer v. State*, 411 S.W.3d 901, 906 (Tex. Crim. App. 2013). However, an instruction "is not required" if the evidence "does not establish th[e] defense." *Miller v. State*, 605 S.W.3d 877, 882 (Tex. App.—Houston [1st Dist.] 2020, pet. ref'd).

The Penal Code specifies that "[i]t is a defense to prosecution that the conduct in question is justified under" chapter nine. Tex. Penal Code § 9.02. One justification listed in that chapter is self-defense, which provides that "a person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." *Id.* § 9.31(a). Moreover, the use of deadly force is only justified in the circumstances set out by the Penal Code. *Id.* § 9.31(d). Of significance to this case, "[a] person is justified in using deadly force against another . . . if the actor would be justified in using force against the other" as set out above and "when and to the degree the actor reasonably believes the deadly force is immediately necessary . . . to protect the actor against the other's use or attempted use of unlawful deadly force." *Id.* § 9.32(a).

11

Another justification under chapter nine is the defense of necessity, which applies when the following requirements are present:

(1) the actor reasonably believes the conduct is immediately necessary to avoid imminent harm;

(2) the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct; and

(3) a legislative purpose to exclude the justification claimed for the conduct does not otherwise plainly appear.

*Id.* § 9.22. "The requirements of subsections 9.22(1) and (2) must be satisfied by evidence, while subsection (3) presents a question of law." *Pennington v. State*, 54 S.W.3d 852, 857 (Tex. App.—Fort Worth 2001, pet. ref'd). "[I]f there is a plain legislative purpose to exclude the defense of necessity, then subsection (3) precludes that defense from being included in the charge." *Chase v. State*, 666 S.W.3d 832, 834 (Tex. App.—Tyler 2023, pet. ref'd).

We note that there is a split in authority among the intermediate courts of appeals regarding whether a necessity instruction may be given in a murder case in which the defendant is given an instruction regarding self-defense using deadly force. Many of our sister courts of appeals have determined that in murder cases in which the defendant claims self-defense, the statute governing self-defense—section 9.32—"evidences a legislative intent that precludes an accompanying necessity instruction." *Id.* at 835; *see Striblin v. State*, No. 04-17-00826-CR, 2019 WL 1049233, at *4 (Tex. App.—San Antonio Mar. 6, 2019, pet. ref'd) (mem. op., not designated for publication); *Sneed v. State*, No. 11-15-00320-CR, 2017 WL 2588164, at *3 (Tex. App.—Eastland Apr. 28, 2017, pet. ref'd) (mem. op., not designated for publication); *Kelley v. State*, No. 05-15-00545-CR, 2016 WL 1446147, at *7 (Tex. App.—Dallas Apr. 12, 2016, pet.

ref'd) (mem. op., not designated for publication); *Wilson v. State*, No. 06-14-00021-CR, 2014 WL 8332264, at *4-6 (Tex. App.—Texarkana Nov. 7, 2014, pet. ref'd) (mem. op., not designated for publication); *see also Darkins v. State*, 430 S.W.3d 559, 571-72 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd) (applying rationale for aggravated assault case); *Carrillo v. State*, 98 S.W.3d 789, 794 (Tex. App.—Amarillo 2003, pet. ref'd) (explaining that appellate courts take guidance from unpublished opinions to "aid in developing reasoning that may be employed").[2]   Another of our sister courts has concluded that a necessity instruction could be given under those circumstances, but our sister court explained that its determination was based on one of its prior rulings and acknowledged that the law in this area had not been resolved. *Castro v. State*, No. 13-17-00266-CR, 2019 WL 3484426, at *3 (Tex. App.—Corpus Christi-Edinburg Aug. 1, 2019, no pet.) (mem. op., not designated for publication); *see Walker v. State*, No. 08-17-00133-CR, 2019 WL 3713757, at *10-11 (Tex. App.—El Paso Aug. 7, 2019, no pet.) (op., not designated for publication) (ruling on harm rather than deciding to rule on availability of necessity instruction).   The Court of Criminal Appeals has concluded that a necessity instruction should have been given in a case not involving deadly force, but it has not addressed whether the presence of a self-defense instruction for a case involving deadly force bars a

---

[2] Although other published cases have determined that the defense of necessity does not apply in cases where an instruction for self-defense using deadly force is submitted, those cases were based in part on the duty to retreat imposed by a prior version of the self-defense statute. *Whipple v. State*, 281 S.W.3d 482, 503 (Tex. App.—El Paso 2008, pet. ref'd); *Searcy v. State*, 231 S.W.3d 539, 544 (Tex. App.—Texarkana 2007, pet. ref'd); *Epley v. State*, 704 S.W.2d 502, 506 (Tex. App.—Dallas 1986, pet. ref'd); *Butler v. State*, 663 S.W.2d 492, 496 (Tex. App.—Dallas 1983), *aff'd on other grounds*, 736 S.W.2d 668 (Tex. Crim. App. 1987); *see also Banks v. State*, 955 S.W.2d 116, 119 (Tex. App.—Fort Worth 1997, no pet.) (noting that defendant had been given charge on necessity and could not have one for necessity and self-defense in murder case).  The duty to retreat was removed from the statute in 2007. *See* Act of May 16, 1995, 74th Leg., R.S., ch. 235, § 1, sec. 9.32, 1995 Tex. Gen. Laws 2141, 2141 (amended 2007) (current version at Tex. Penal Code § 9.32).

necessity instruction. *See Bowen v. State*, 162 S.W.3d 226, 229-30 (Tex. Crim. App. 2005) (determining that defendant was entitled to necessity instruction when defendant did not use deadly force).

We agree with the analyses of the majority of our sister courts of appeals who have addressed the issue and similarly conclude that the plain language of section 9.32 demonstrates a legislative intent to exclude the necessity defense. "The overarching rule of statutory construction is that we construe a statute in accordance with the plain meaning of its text unless the text is ambiguous or the plain meaning leads to absurd results that the legislature could not possibly have intended." *Ex parte Vela*, 460 S.W.3d 610, 612 (Tex. Crim. App. 2015). "In ascertaining the plain meaning of a word, we read words and phrases in context and construe them according to the rules of grammar and usage." *Lopez v. State*, 253 S.W.3d 680, 685 (Tex. Crim. App. 2008); *see* Tex. Gov't Code § 311.011 (addressing common and technical usage of words in construing codes). Appellate courts also interpret statutes "together and harmonized, if possible," to give effect to all of the statutory provisions. *See Ex parte Gill*, 413 S.W.3d 425, 430 (Tex. Crim. App. 2013). Appellate courts "presume that every word has been used for a purpose and that each word, phrase, clause, and sentence should be given effect if reasonably possible." *O'Brien v. State*, 544 S.W.3d 376, 384 (Tex. Crim. App. 2018).

"A plain reading of Section 9.32 shows that the Legislature intended to impose a higher standard for justification of deadly force, permitting its use *only* when the actor's life is immediately threatened by another's use of unlawful deadly force . . . ." *Chase*, 666 S.W.3d at 835; *see* Tex. Penal Code § 9.32.[3] "A necessity defense involves a substantially lower showing,

---

[3] Chapter nine also includes a provision justifying the use of deadly force in defense of a third person. *See* Tex. Penal Code § 9.33. However, that provision is not at issue in this case.

14

requiring only that the conduct be necessary to 'avoid imminent harm.'" *Chase*, 666 S.W.3d at 835 (quoting Tex. Penal Code § 9.22(1)); *see* Tex. Penal Code § 1.07(a)(25) (defining "harm" as "anything reasonably regarded as loss, disadvantage, or injury, including harm to another person in whose welfare the person affected is interested"). Accordingly, "allowing an instruction on necessity when the appellant used deadly force *and* obtained a jury instruction on self-defense would undermine the legislative purpose of limiting the justifiable use of deadly force to preventing an immediate threat to one's life . . . ." *Chase*, 666 S.W.3d at 835.

Because section 9.32 plainly evidences a legislative purpose for excluding the defense of necessity under the circumstances of this case, the trial court did not err in denying the requested jury instruction on necessity. Accordingly, we overrule Rollins's second issue on appeal.

## CONCLUSION

Having overruled Rollins's two issues on appeal, we affirm the trial court's judgment of conviction.

_____
Karin Crump, Justice

Before Justices Triana, Theofanis, and Crump

Affirmed

Filed: March 13, 2025

Publish

15